

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00870-CR

Gregory Everett **MITCHELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR11068
Honorable Philip A. Kazen Jr., Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  December 4, 2013

AFFIRMED

Appellant Gregory E. Mitchell was indicted on separate counts of intoxication manslaughter and manslaughter in the death of Ryan Bettcher. The jury found Mitchell guilty of intoxication manslaughter and sentenced him to fifteen years confinement in the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00. On appeal, Mitchell asserts (1) the trial court erred in admitting an alcohol analysis request form and (2) the evidence is not legally sufficient to support his conviction. We affirm the trial court's judgment.

**BACKGROUND**

On May 7, 2011, Mitchell drove away from his father's residence after drinking "three Miller Lite beers." Roxanne Leon was traveling with her two children in the westbound lane on Aviation Boulevard, Bexar County, Texas, when she first saw Mitchell's vehicle as it approached head-on in her lane of traffic. Mitchell veered off the road and struck a guard post. Leon immediately pulled over, called 911, and approached Mitchell's vehicle. No one was in the vehicle, but when Leon turned, she saw Mitchell walking in the middle of the street and he stated, "I swerved. I hit someone." Leon described Mitchell as either "drunk or on something" and they both proceeded to look for someone who might be injured.

Universal City police officers arrived shortly thereafter and were able to locate Bettcher on the side of the road, several feet from the point of impact. Bettcher was already deceased when officers located his body. Mitchell's right side-view mirror was found near Bettcher's body. Officers further noted the front passenger quarter panel of Mitchell's vehicle was damaged; his passenger–side windshield was shattered and imbedded with pieces of Bettcher's hair, flesh, and blood.

Officer David Allen and Detective Sheila Vitacco took photographs of the scene. Officer Allen described Mitchell as thick-tongued, slurring his speech, slow to respond, and unsteady on his feet. Officer Allen also noted a strong odor of alcohol on Mitchell's breath. Detective Allen conducted several field sobriety tests. Mitchell failed the walk-and-turn and the one-leg stand. Mitchell was placed under arrest for intoxication manslaughter. After Mitchell refused both a blood and breath sample, he was taken to the Magistrate's Office for a mandatory blood draw due to the officer's suspicion that alcohol was involved in Bettcher's death.

Officer Allen submitted an analysis request form for the blood testing. Lois Peterson, the nurse on duty, drew a blood sample from Mitchell's arm in the presence of Officer Allen. Nurse

Peterson did not testify at the trial. Detective Allen, however, testified that he observed Peterson clean Mitchell's arm with iodine, draw blood into two gray–top vials, and turn the vials ten times as required by protocol. The vials were labeled with Mitchell's name and the agency case number, placed in a manila envelope, sealed with the necessary request form completed by Officer Allen, and secured in a lock box.

Toxicologist Veronica Hargrove testified she received the two vials sealed in a manila envelope labeled with Mitchell's name and the agency case number. Hargrove conducted blood alcohol testing which showed Mitchell's blood alcohol content at .20 grams per deciliter at the time of the blood draw.

## CHAIN OF CUSTODY

In his first issue on appeal, Mitchell contends the trial court erred in admitting a redacted version of the request form over his hearsay objection. Without the request form in evidence, Mitchell argues, the State failed to prove the necessary chain of custody regarding the toxicology reports. The request form was redacted to provide only the following identifying information: Mitchell's name; his social security number; his date of birth; his sex; the date of the incident; the time of arrest; the submitting agency; the agency case number; the type of specimen submitted (i.e., blood); the type of case/test to be performed (i.e., intoxication assault/intoxication manslaughter—all drugs including alcohol); the printed name of the requesting officer; the officer's signature; the date; and a phone number for the requesting agency.

The State contends the form was introduced solely to support the beginning of the chain by identifying the vials of blood. Additionally, the State argues that any questions regarding whether the proper vials were used or whether proper medical protocol was followed is only relevant to the weight to be given the testimony and does not affect admissibility.

### A.    Standard of Review

An appellate court reviews a trial court's admission of extraneous offense evidence under an abuse of discretion standard.  *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004).  "A trial court abuses its discretion when its decision [to admit evidence] lies outside the zone of reasonable disagreement."  *Casey*, 215 S.W.3d at 879; *accord Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

### B.    Texas Rule of Evidence 901

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  TEX. R. EVID. 901(a); *Druery*, 255 S.W.3d at 502.  Texas Rule of Evidence 901 is interpreted liberally and "[t]he trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified."  *See Druery*, 225 S.W.3d at 502.

Within the test for authentication is whether the chain of custody was preserved.  A chain of custody is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory."  *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Gallegos v. State*, 776 S.W.2d 312, 315–16 (Tex. App.—Houston [1st Dist.] 1989, no pet.).  Links in the chain can be proven by circumstantial evidence.  *Bass v. State*, 830 S.W.2d 142, 146 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).  Absent evidence of fraud or tampering, alleged issues concerning gaps in the chain of custody affect the weight to be given the evidence and not the admissibility of the evidence.  *Druery*, 225 S.W.3d at 503–04; *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997).

**C.    Analysis**

In order to allow the toxicologist to testify regarding the scientific tests and results, the State is required to establish a proper chain of custody for the tested specimen. *Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.).  Here, the State bore the burden to establish that the blood drawn from Mitchell was the same blood delivered to be tested at the toxicology lab.  *Reed v. State*, 158 S.W.3d 44, 52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  At trial, Officer Allen testified that he "observed the nurse clean the area with iodine, take a blood sample, rotate the vial and move it ten times, seal it in a manila envelope and place it in a lock box."  Additionally, Officer Allen testified the vials were labeled with Mitchell's name and the agency number.  Defense counsel took the officer on voir dire and questioned him as to his observations and how he could be certain the blood vials were the same ones he collected from the nurse.  During the State's re-direct of Officer Allen, the State offered into evidence the request form to show the two vials of blood were the same vials submitted to the crime lab and tested by Toxicologist Veronica Hargrove.  Over objection by defense counsel, the trial court admitted the evidence.

Assuming, without deciding, the request form was hearsay, and that none of the hearsay exceptions apply, there is no harm.  Officer Allen testified that he witnessed Nurse Peterson follow each of the statutory requirements.  His testimony was offered without objection from the defense.  Thus, any error resulting from the trial court's admission of the request form was "harmless in light of other properly admitted evidence proving the same fact."  *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *see also Cordero v. State*, No. 08-05-00285-CR, 2007 WL 4724675, at *7 (Tex. App.—El Paso 2007, pet. ref'd) (citing *Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd)).

Accordingly, we overrule Mitchell's first issue.

CONFRONTATION CLAUSE

Mitchell next contends his Sixth Amendment right to confront the witnesses against him was violated by the admission of the blood request form. Specifically, Mitchell argues the request form was testimonial in nature and the State's failure to call Nurse Peterson, as a witness substantiating the blood draw, denied him the ability to cross-examine her. The State contends that because the request form was not an out-of-court testimonial statement, the request form was not barred by the Confrontation Clause.

**A.** **Standard of Review**

An appellate court defers to a trial court's determination of historical facts and credibility, but constitutional rulings, particularly whether a statement is testimonial or non-testimonial, are reviewed de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (citing *Lilly v. Virginia*, 527 U.S. 116, 137 (1999)).

**B.** **Confrontation Clause**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 407 (1965). The Confrontation Clause and cross-examination exist in part to ensure fairness in criminal proceedings and reliability of the evidence. *See Lilly*, 527 U.S. at 123–24. Through cross–examination, a defendant tests the believability of a witness and the truth of that witness' testimony. *Id.*; *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Therefore, to trigger the protections afforded by the Confrontation Clause, an out-of-court statement must be made by an absent witness and be testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). We weigh each Confrontation Clause issue "on a case-by-case basis, carefully taking into account the defendant's right to cross-examine and the risk factors

associated with admission of the evidence." *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

In *Crawford v. Washington*, 541 U.S. at 68, the Supreme Court held that the Confrontation Clause bars the admission of an out-of-court testimonial statement made by a witness who does not testify unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. In determining whether an out-of-court statement is testimonial, appellate courts look to (1) the formal nature of the interaction, (2) the intent of the declarant, or (3) some combination of the two factors. *Moore v. State*, 169 S.W.3d 467, 471 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Crawford*, 541 U.S. at 68).

The *Crawford* Court emphasized the Confrontation Clause is more a procedural guarantee than a substantive one. *Crawford*, 541 U.S. at 61. Thus, if the proposed testimony is the functional equivalent of an ex parte, in-court statement, the statement is testimonial. *Id.* at 51. The *Crawford* Court further indicated that the subjective intent of the declarant was relevant holding that a statement "knowingly given in response to structured police questioning" was testimonial "under any conceivable definition" of interrogation. *Id.* at 53 n.4.

**C.      Analysis**

The case of *Ash v. State*, No. 08-04-00046-CR, 2006 WL 357875 (Tex. App.—El Paso Feb. 16, 2006, no pet.) (mem. op., not designated for publication) is instructive. Similar to the request form in question, a form containing the defendant's name, case number, date, and officer's initials was also admitted. *Id.* at *1–2. The El Paso court found the information contained within the form involved routine information not requiring any subjective interpretation or analysis by police personnel. *Id.* at *4.

This case is not different. Officer Allen testified he read the initial request form verbatim to Mitchell prior to obtaining the blood draw. He also testified the request form was required prior

to submission to the laboratory and it contained a checklist to which he adhered step-by-step. Additionally, all information contained on the request form was testified to by Officer Allen during either direct testimony or on cross-examination. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (deciding that proper admission of testimony on the same information contained in the form cured any possible error).

Mitchell points to *Burch v. State*, 401 S.W.3d 634, 637–40 (Tex. Crim. App. 2013), for the proposition that the State's failure to present Nurse Peterson for cross-examination barred admission of the request form under the Confrontation Clause. In *Burch*, the State called a "reviewing analyst" to testify to the lab report substantiating the substance in question was cocaine. *Id.* at 637–38. The witness did not have personal knowledge of the actual tests performed or the procedures followed during such testing and, therefore, could not testify to the contents of the analysis. *Id.* at 639–40. Here, Nurse Peterson did not perform any tests. To the contrary, Veronica Hargrove, the toxicologist who performed all of the tests was available for cross-examination by the defense. Unlike an autopsy or a toxicology report, the request form did not contain any analysis, but simply started the chain of evidence sufficient to allow Hargrove to testify as to the blood-alcohol levels in Mitchell's blood. *Cf. Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009); *McWilliams v. State*, 367 S.W.3d 817, 819 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Wood v. State*, 299 S.W.3d 200, 208 (Tex. App.—Austin 2009, pet. ref'd). Even further, the request form was redacted to contain only identifying information.

Thus, regardless of whether the request form was testimonial, the analyst who performed any and all testing on Mitchell's blood was called to testify and was cross-examined by the defense. Mitchell's Sixth Amendment rights were not violated. We, therefore, overrule this issue on appeal.

## SUFFICIENCY OF THE EVIDENCE

Mitchell challenges the sufficiency of the evidence to support his intoxication manslaughter conviction. Specifically, Mitchell argues the State failed to prove Mitchell's conduct caused Bettcher's death.

### A.    Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.2d 414, 421 (Tex. Crim. App. 2009); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must defer to the jury's assessment of the credibility of the witnesses "and the weight to be given to their testimony," *Brooks*, 323 S.W.3d at 899, and allow for reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that "the jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law); *Jackson*, 442 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). In so doing, an appellate court presumes that the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Williams*, 235 S.W.3d at 750. Only upon a finding the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982); *Brooks*, 323 S.W.3d at 904.

This legal sufficiency standard applies equally to both direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

## B.      Intoxication Manslaughter

"A person commits [intoxication manslaughter] if the person [] (1) operates a motor vehicle in a public place . . . , (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake." TEX. PENAL CODE ANN. § 49.08 (West 2011). Appellant contends the evidence is legally insufficient to support two elements of the offense: (1) that he operated a motor vehicle and (2) that he was intoxicated. The Texas Penal Code does not define the term "operated." However, in assessing whether the evidence is sufficient to support the operation of a motor vehicle element, courts examine all of the evidence to determine whether it supports a finding that Appellant exerted personal effort to cause the vehicle to function. *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). "'Intoxicated' means . . . not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." TEX. PENAL CODE ANN. § 49.01(2)(A).

## C.      Analysis

### 1.      Who Was Operating Mitchell's Vehicle

Mitchell contends the evidence is insufficient to prove he was operating the vehicle at the time of the accident. However, there was no evidence of other individuals in Mitchell's vehicle that evening. Leon saw the car hit the guard post and by the time she called emergency officers, Mitchell was out of his vehicle wandering in the middle of the road. Mitchell immediately told Leon, "I swerved. I hit somebody." Minutes later, when Officer Allen asked Mitchell what happened, Mitchell replied, "I think I hit someone . . . I'm sorry, I just didn't see him. I hit him." The damage to Mitchell's vehicle was consistent with Bettcher hitting his windshield. From all

the evidence presented, a reasonable jury could have concluded that Mitchell was operating the vehicle that struck Ryan Bettcher.

>    2.    *Mitchell's Intoxication Caused Bettcher's Death*

Mitchell argues there were no witnesses to the accident or the manner in which Mitchell was operating his vehicle at the time in question. The toxicologist testified that, in her opinion, it was "very unlikely" Mitchell's blood alcohol content would have been below .08 grams per deciliter at the time of the accident. Although defense counsel aggressively cross-examined the toxicologist, a reasonable juror could have put significant weight behind Mitchell's blood alcohol content at .20 grams per deciliter, more than twice the amount that defines intoxication in the Penal Code. *See* TEX. PENAL CODE ANN. § 49.01 (West 2011); *Cone v. State*, 383 S.W.3d 627, 633 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

Mitchell further argues that no behavioral connection can be drawn between Mitchell's actions and any substances that might have been detected in his blood. *See* TEX. PENAL CODE ANN. § 6.04(a) (West 2011) ("A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause . . . ."); *see also Quintanilla v. State*, 292 S.W.3d 230, 232–35 (Tex. App.—Austin 2009, pet. ref'd). On appeal, Mitchell contends he swerved to avoid hitting Bettcher who was "walking down a dark, barely-paved, poorly defined road." The evidence is to the contrary.

Leon testified Mitchell was traveling eastbound in the westbound lane, coming at her vehicle head-on before he veered across the road into a guard post. When she first found Mitchell he was walking in the middle of the street looking for someone who he hit. The evidence shows that when Bettcher was struck by Mitchell's vehicle, Bettcher was on foot, traveling in the grass on the side of the road and there were no brake marks evident on the ground. Mitchell acknowledged drinking two to three Miller Lite beers prior to the accident. Leon described

Mitchell as "drunk or on something" and Officer Allen testified that Mitchell was "thick-tongued," glassy-eyed, unsteady, and smelled of alcohol. Additionally, Mitchell was unable to successfully complete either the one-leg stand or the walk-and-turn field sobriety tests. There was sufficient evidence admitted from which the jury could find beyond a reasonable doubt a causal connection between Bettcher's death and Mitchell's intoxication, "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or having an alcohol concentration of 0.08 or more grams per 100 milliliters of blood. *See* TEX. PENAL CODE ANN. § 49.08 (West 2011); *Glauser v. State*, 66 S.W.3d 307, 313 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

Here, based on both the direct and circumstantial evidence, the jury had an opportunity to assess the witnesses' credibility and make reasonable inferences therefrom. *See Brooks*, 323 S.W.3d at 899; *Williams*, 235 S.W.3d at 750. Viewing the evidence "in the light most favorable to the verdict," a rational jury could have inferred the ultimate fact that Mitchell operated a motor vehicle and that he was intoxicated. *See Brooks*, 323 S.W.3d at 899; *see also Louis v. State*, 159 S.W.3d 236, 247–48 (Tex. App.—Beaumont 2005, pet. ref'd).

Because the evidence is legally sufficient to prove both the operation and the intoxication elements beyond a reasonable doubt, we overrule Mitchell's third issue.

### CONCLUSION

The blood analysis request form was admitted to establish the beginning of the chain of custody, and any questions regarding the veracity of the request form would affect the weight to be given the testimony, not whether the request form was admissible. *See Druery*, 225 S.W.3d at 503–04. Further, because we concluded the request form was not testimonial in nature, the request form's admission did not violate Mitchell's Sixth Amendment rights. Finally, based on both the direct testimony regarding Mitchell's behavior and demeanor at the scene, and the circumstantial

evidence offered through witnesses, the evidence is legally sufficient to prove Mitchell operated the vehicle and a causal connection between Bettcher's death and Mitchell's intoxication.

Having overruled all of Mitchell's appellate issues, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH