

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00430-CR

San Juan **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR3674
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

Appellant San Juan Garcia appeals his conviction for the offense of driving while intoxicated. On appeal, Garcia raises three issues challenging the admission of evidence, improper hearsay testimony, and the trial court's jurisdiction. We affirm the judgment of the trial court.

## BACKGROUND

On January 10, 2014, Garcia was involved in a motor vehicle accident in which the car Garcia was driving collided with a motorcycle driven by Elliot Brown. Brown was injured in the accident and, immediately following the collision, was unable to walk. According to the first

officer on the scene, San Antonio Police Department ("SAPD") Officer Kody Patterson, Garcia smelled strongly of alcohol, had slurred speech, and stumbled when he walked. Garcia appeared uninjured, aside from blood on his nose. Also according to Officer Patterson, Garcia admitted he had been drinking.

SAPD Detective Gary Nel, a member of the DWI Task Force, administered three standard field sobriety tests to Garcia, who informed Detective Nel he was "a hundred percent." According to Detective Nel, Garcia was cooperative but "struggled to follow the instructions." Additionally, Garcia smelled strongly of intoxicants, was unsteady on his feet, and had glassy and bloodshot eyes and slurred speech. Detective Nel placed Garcia under arrest for suspicion of driving while intoxicated and asked Garcia to voluntarily provide a blood sample, but Garcia refused. Detective Nel then applied for and received a search warrant for a blood specimen, which was drawn by the nurse on duty. The test results for Garcia's blood specimen indicated Garcia's blood alcohol concentration ("BAC") was 0.21 g/dL, which is over the legal limit of 0.08 g/dL. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011) (defining "intoxicated").

The State later charged Garcia by indictment with the offense of driving while intoxicated ("DWI"), which was enhanced by two prior DWI convictions. *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2017). A jury found Garcia guilty and, during the punishment phase, found Garcia used or exhibited his vehicle as a deadly weapon. Based upon the jury's recommendation, the trial court sentenced Garcia to thirty years' imprisonment.

This appeal followed.

## ANALYSIS

### Jurisdiction

We first address Garcia's contention that the State failed to invoke the trial court's jurisdiction because the State failed to prove all prior DWI convictions pleaded in the indictment.

Garcia argues that because the State alleged eight prior DWI convictions in the indictment, the State was required to prove all eight prior convictions to invoke the trial court's jurisdiction.

Ordinarily, when the State alleges a prior conviction for jurisdictional purposes, a defendant may stipulate to the allegation and prevent the State from adducing evidence of the prior conviction other than the stipulation. *See Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (finding no error in the admission of the stipulation into evidence); s*ee generally Tamez v. State*, 11 S.W.3d 198, 202–03 (Tex. Crim. App. 2000). If the State alleges more convictions than necessary to establish jurisdiction, a defendant may stipulate to the statutorily required number of prior convictions necessary to establish jurisdiction. *See Tamez*, 11 S.W.3d at 202–03. Under these circumstances, the State may not read the indictment allegations concerning the additional prior convictions or adduce extrinsic evidence of any of the convictions, including the one to which the defendant stipulated. *See Hernandez v. State*, 109 S.W.3d 491, 493–94 (Tex. Crim. App. 2003) (per curiam) (finding error when the State read and proved three prior convictions when the offense of felony driving while intoxicated required proof of only two prior convictions); *Tamez*, 11 S.W.3d at 202–03 (holding it was error for the State to read and prove six prior convictions although the defendant offered to stipulate to the required two).

Commission of a DWI offense under Section 49.04 is a Class B misdemeanor, unless the person has been convicted of two prior DWI offenses. In such event, the offense may be elevated to a third degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04(b), 49.09(b). When the State uses prior convictions to elevate a misdemeanor DWI offense to a felony, the State must plead the prior convictions in the indictment for the trial court to gain jurisdiction over the felony offense, and the State must prove the prior convictions to support prosecution. *Robles v. State*, 85 S.W.3d 211, 213–14 (Tex. Crim. App. 2002); *Tamez*, 11 S.W.3d at 201; TEX. PENAL CODE ANN. § 49.09(b). However, where a defendant stipulates to the prior convictions, reading or introducing the

stipulation to the jury is sufficient to meet the State's burden of proof, making extraneous evidence of the prior convictions inadmissible under Texas Rule of Evidence 403. *Robles*, 85 S.W.3d at 213–14; *Tamez*, 11 S.W.3d at 202.

Here, prior to its opening statement, the State read the indictment, including only two prior convictions rather than all eight as alleged in the indictment. In the charge of the court, the trial court instructed jurors that Garcia stipulated to the two prior convictions that the State read with the indictment. Therefore, because Garcia stipulated to the two prior convictions, the State could not adduce evidence of the other six prior convictions alleged in the indictment. Accordingly, we conclude the State properly invoked the trial court's jurisdiction.

Issue three is overruled.

### Evidentiary Issues

In issues one and two, Garcia contends the trial court erred by admitting the blood analysis report and by allowing Dr. Vanessa Hargrove to testify over objection that Garcia's blood specimen was drawn at 00:12 on the night of the accident. We review the trial court's admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

### *Blood Analysis Report*

In issue one, Garcia complains the trial court improperly admitted State's Exhibit No. 34, the blood analysis report, because the record contains no evidence of the initial link in the chain-of-custody for the blood evidence itself. The nurse who drew Garcia's blood did not testify at trial. However, Detective Nel testified he observed the nurse use two gray-topped vials to draw blood samples from Garcia, rotate the vials ten times, and label and seal the vials in a biohazard bag, which was then sealed in an envelope and placed into an evidence refrigerator. Detective Nel

also testified the labels used by the nurse identified the SAPD case number and Garcia's name, as well as the detective's name and the name of the nurse who drew the blood sample.

Toxicology chemist Marie Renteria testified she received the envelope containing the blood samples at the Bexar County Crime Lab on January 13, 2014. Renteria testified she verified the seals on the vials, as well as the outer packaging, were intact. Renteria assigned Garcia's samples the in-house accessioning number FTL-20140004. Renteria then placed the blood samples in a secured storage refrigerator for testing.

Senior toxicology chemist Mackenzie Dunn testified she tested the blood sample identified by number FTL-20140004 and Garcia's name. Dunn testified she received two gray-topped blood vials for testing in this case with Garcia's name and assigned FTL number. Dunn further testified she analyzed the blood using gas chromatography to determine its blood alcohol concentration. Dunn identified State's Exhibit No. 34, the blood analysis report, as a true and accurate copy of the testing she conducted and the results of that testing. Toxicology chemist Laurel Porter testified she confirmed the results of Dunn's testing.

Dr. Hargrove, the Chief Toxicologist at the Bexar County Medical Examiner's Office, testified she reviewed the testing results. Dr. Hargrove identified State's Exhibit No. 34 as the blood analysis report produced following the testing of FTL-20140004 and which she signed. Dr. Hargrove further testified the report lists Garcia's full name and shows the vials were received at the lab on January 13, 2014. When the State moved to admit the blood analysis report, Garcia objected, arguing the chain of custody had not been established because "[w]e haven't heard from a nurse or the person who actually did the drawing of the blood and followed all the protocol to do that." Garcia asserted, "there is a gap there." The trial court overruled the objection and admitted the report. Dr. Hargrove then testified the report showed Garcia's BAC level at the time his blood was drawn was 0.21 g/dL.

Garcia argues on appeal that the trial court abused its discretion by admitting the blood analysis report because a proper chain of custody was not established. Specifically, Garcia asserts that for a proper chain of custody to be established, the State was required to present testimony from the person who actually drew his blood.

**Applicable Law**

A proper chain of custody must be established to lay the predicate for admission of blood test results. *Mitchell v. State*, 419 S.W.3d 655, 660 (Tex. App.—San Antonio 2013, pet. ref'd). The State must prove that the blood drawn from the defendant was the same blood that was received at the laboratory. *Id*. It is only necessary for the State to prove the beginning and end of the chain of custody to support admission of the evidence, "particularly when the chain ends at a laboratory." *Id*. at 559; *see also Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.——Houston [14th Dist.] 2001, no pet.). Absent any evidence of fraud or tampering, any gaps in the chain of custody go to the weight of the evidence, not to its admissibility. *Mitchell*, 419 S.W.3d at 660; *Druery v. State*, 225 S.W.3d 491, 503–04 (Tex. Crim. App. 2007). Finally, it is not necessary that the nurse who drew the blood testify if an officer who observed the nurse conduct the blood-draw can testify that the proper procedure was followed. *See Beck v. State*, 651 S.W.2d 827, 829 (Tex. App.—Houston [1st Dist.] 1983, no pet.) (holding that when standard procedures are followed, the testimony of a person who observed the blood draw and the laboratory technician who tested the sample adequately establishes the beginning and the end of the chain of custody, even if the identity of the specific person who drew the blood is unknown).

**Discussion**

Here, Detective Nel's testimony was sufficient to establish the beginning of the chain of custody for the blood samples. He witnessed the nurse use two gray-topped vials to draw the blood from Garcia, described the procedures she followed and how she labeled the vials, and saw the

nurse seal the vials in an envelope and place the envelope in an evidence refrigerator. *See Mitchell*, 419 S.W.3d at 660. Likewise, Renteria's and Dunn's testimony sufficiently established the end of the chain of custody at the laboratory. *See id.* Renteria testified that on January 13, 2014 she received the blood vials for testing in Garcia's case, his name was on the form, and the blood vials were intact. *See id.* Dunn then analyzed those blood samples for their alcohol concentration. *See id.* Dunn testified the blood analysis report accurately reflected the testing she conducted and the testing results. *See id.* Finally, Porter testified she verified Dunn's testing results, and Dr. Hargrove testified she reviewed the results and signed the blood analysis report. *See id.* The trial court therefore did not abuse its discretion by admitting the blood analysis results showing Garcia's blood alcohol concentration level.

Issue one is overruled.

### *Admission of Hearsay Testimony*

During Dr. Hargrove's testimony, the State asked Dr. Hargrove whether she was aware "at what time the blood was drawn." Dr. Hargrove responded the information was in her records, and the State asked Dr. Hargrove if she could refresh her memory by looking at her records. Defense counsel objected on the basis of hearsay, arguing "Even though it's in her records, she had to get that from somebody else … the fact that she copied it into her records does not mean it's not hearsay." The trial court overruled the objection, and Dr. Hargrove testified "the blood was drawn on January 11, 2014, at 0012." On appeal, Garcia contends the trial court erred by overruling the objection and allowing the testimony regarding the time at which the blood was drawn.

### Preservation of Error

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion ...." TEX. R. APP. P. 33.1(a)(1). "In addition, a party must object each time the inadmissible evidence

is offered or obtain a running objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). "An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Id*.

**Discussion**

The record shows that prior to Dr. Hargrove's testimony, toxicology chemist Marie Renteria with the Bexar County Crime Lab testified during cross-examination that Garcia's blood was drawn at 00:12 on January 11, 2014.

| | |
|---|---|
| [Defense]: | Do you know the amount of lapsed time between the time [the blood] was collected until the time it got to your office? |
| [Renteria]: | No. |
| [Defense]: | If you look at the forms, can you figure it out? |
| [Renteria]: | I mean, from the time of the draw, not the time that the officers had it or where they had it. I can tell you the time that — the draw was done on the 11th at 0012 and we received it on the 13th at 1508. |
| [Defense]: | So on January 11th at 12 minutes past midnight is when the blood was drawn from the person's arm. Is that fair to say? |
| [Renteria]: | Yes. |

Any possible error in the trial court's decision to overrule Garcia's objection to Dr. Hargrove's testimony was overcome by Renteria's previous unobjected-to testimony that the blood was drawn at 00:12 on January 11, 2014. *See id*.

Issue two is overruled.

**CONCLUSION**

For the above reasons, we affirm the judgment of the trial court.

Irene Rios, Justice

DO NOT PUBLISH