

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00401-CR

Christopher Timothy **BRADY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 559662
Honorable Mary D. Roman, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: February 5, 2020

AFFIRMED

Appellant Christopher Timothy Brady appeals his conviction of driving while intoxicated, second offense, with an open container. On appeal, he argues the trial court abused its discretion in admitting a laboratory report showing his blood alcohol concentration into evidence because the State failed to properly authenticate the beginning of the chain of custody for that evidence. We affirm the trial court's judgment.

BACKGROUND

While on patrol, State Trooper Tyler Morton saw Brady drive past him with a broken high mount rear light. After witnessing Brady cut in front of another vehicle, Trooper Morton activated his overhead lights and pulled Brady over. According to Trooper Morton, Brady did not make eye contact, smelled of alcohol, and did not speak clearly. Trooper Morton also observed an open container in Brady's vehicle. Brady told the trooper it was a soda, but mentioned he previously consumed a few beers. Trooper Morton told Brady about his broken light, and Brady appeared to be confused. When Trooper Morton asked Brady where he was going, Brady gave a confused answer.

After performing a field sobriety test, Trooper Morton concluded Brady was intoxicated, transported him to the magistrate's office, and obtained a blood search warrant. A registered nurse at the Bexar County Magistrate's Office drew two tubes of Brady's blood. Trooper Morton submitted these tubes to the Texas Department of Public Safety ("the Department") crime lab in Austin for testing. A forensic scientist with the Department's crime lab in Austin tested blood samples from those tubes and concluded Brady's blood alcohol concentration was .128 grams per deciliter at the time of the blood draw.

The State charged Brady with driving while intoxicated, a second offense, with an open container. In a bench trial, the court heard testimony from Trooper Morton and the forensic scientist before finding Brady guilty. The trial court assessed punishment at six months in jail with credit for time served. Brady filed this appeal.

ANALYSIS

*Standard of Review*

We review a trial court's ruling on an authentication issue under an abuse of discretion standard. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018); *Watson v. State*, 421

S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd). We will uphold a trial court's admission of evidence so long as its decision is within the zone of reasonable disagreement. *Fowler*, 544 S.W.3d at 848; *Watson*, 421 S.W.3d at 190.

### *Applicable Law*

Rule 901 of the Texas Rules of Evidence governs the authentication requirement for the admissibility of evidence and requires the proponent to produce sufficient evidence to support a finding that the evidence is what the proponent claims it is. TEX. R. EVID. 901(a); *Fowler*, 544 S.W.3d at 848. Part of the authentication test is whether the chain of custody was properly preserved. *Watson*, 421 S.W.3d at 190; *Mitchell v. State*, 419 S.W.3d 655, 659 (Tex. App.—San Antonio 2013, pet. ref'd). The chain of custody is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Watson*, 421 S.W.3d at 190; *Mitchell*, 419 S.W.3d at 659. The State can prove links in the chain with circumstantial evidence. *Watson*, 421 S.W.3d at 190; *Mitchell*, 419 S.W.3d at 660.

### *Application*

Brady argues the State did not establish the first part of the chain of custody of State Exhibit 6—the laboratory report regarding Brady's blood draw—because it did not identify the nurse who performed Brady's blood draw by name. At trial, Trooper Morton testified he personally observed the nurse at the Bexar County Magistrate's Office draw Brady's blood using the two blue tubes he provided and that she inspected. Trooper Morton testified he watched the nurse seal the blue tubes with tape and write identifying information—including her name—on each tape. He testified he personally collected the blue tubes from the nurse, placed them in an evidence box, and secured the evidence box in his patrol car. He also confirmed the blue tubes he placed in the secure evidence box in his patrol car were the same blue tubes the nurse used to draw Brady's blood. He

testified he personally later delivered the evidence box to the Department's crime lab in Austin for testing.

The trial court also heard testimony from the forensic scientist with the Department's crime lab in Austin who received the secured evidence box and tested the blood. She testified that, in accordance with the Department's procedures, she assigned the blood samples a case number, generated paper documentation, and attached an identifying sticker with a unique bar code to the blue tubes of blood. She testified she placed the blue tubes of blood in a secured refrigerator before she tested the blood. When she tested the blood, she inspected each of the blue tubes to confirm that they had not been tampered with. After testing the blood, she generated the laboratory report.

This testimony establishes the beginning of the chain of custody and sufficiently authenticates the laboratory report. *See Watson*, 421 S.W.3d at 190; *Mitchell*, 419 S.W.3d at 659–60. Even though Trooper Morton did not identify the nurse by her name, he testified he watched the nurse who performed the blood draw write her name on the tape she used to seal the blue tubes of Brady's blood, and he confirmed those tubes were the same ones he delivered to the Department's crime lab in Austin for testing. This testimony was sufficient for the trial court to have determined that the laboratory report was derived from the blood that was drawn from Brady. *See Mitchell*, 419 S.W.3d at 660 (concluding officer's testimony that he witnessed a nurse follow statutory requirements when performing a blood draw sufficiently established the beginning of the chain of custody). Accordingly, we overrule Brady's argument that the State failed to establish the beginning of the chain of custody.

### CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

Do Not Publish