

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00647-CR

Reynaldo **POLENDO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CR-9032
Honorable Jefferson Moore, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: July 28, 2021

AFFIRMED

Appellant Reynaldo Polendo appeals his conviction for aggravated robbery, claiming the evidence that he exhibited a deadly weapon is legally insufficient, the trial court abused its discretion in admitting evidence that Polendo committed two extraneous robberies, and he received ineffective assistance of counsel.  We affirm.

### BACKGROUND

In the span of a week, Polendo walked into a Target, a Lowe's, and a Marshalls, gathered merchandise, and left the stores without paying.  But these were not simple shoplifting trips.  Each

time, on the way out, Polendo raised his shirt to display either a gun (according to some) or what looked like a gun (according to others) or nothing at all (according to Polendo). Surveillance videos of varying quality captured all three crimes. When interviewed by police, Polendo admitted that the videos depicted him, that he stole merchandise, and that he lifted his shirt on the way out of the stores. But he said that he only picked up his shirt "to scare" the employees—"I never had no pistol. I never had no shape or form of a gun. . . . I would never bring a gun to steal anything."

In this trial, which was for the crime at Target, the trial court allowed the State to present evidence of the Lowe's and Marshalls robberies over Polendo's objection. After hearing the evidence, the jury convicted Polendo of aggravated robbery. The trial court found the enhancement paragraph true and sentenced him to forty years' imprisonment and a $10,000 fine.

## ANALYSIS

### Sufficiency of the Evidence

Polendo first argues that the evidence is legally insufficient to prove that he displayed a firearm on his way out of Target. Unless another point on appeal warrants a new trial, he asks that the judgment be reformed "to reflect a conviction for only simple robbery."

#### Standard of Review

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). In a legal-sufficiency analysis, we do not ignore any evidence and view all the evidence in the light most favorable to the verdict. *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016). An

appellate court cannot act as a thirteenth juror and make its own assessment of the evidence. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, a court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally. *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

A court conducting a sufficiency review must consider the cumulative force of all the evidence, even evidence not properly admitted. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Additionally, direct and circumstantial evidence are equally probative, and circumstantial evidence alone can be sufficient to establish guilt. *Nowlin*, 473 S.W.3d at 317.

"The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence so long as it is supported by the record." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). We must defer to its determinations. *Nowlin*, 473 S.W.3d at 317. However, inferences based on mere speculation are not sufficient to support a criminal conviction. *Ramsey*, 473 S.W.3d at 809.

*Applicable Law*

A person commits aggravated robbery if he commits robbery as defined in Section 29.02[1] and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2). A "deadly weapon" means "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

---

[1] A person commits robbery if, while committing theft, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(2).

A deadly weapon is *used* if it is "employed or utilized in order to achieve its purpose." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). A deadly weapon is *exhibited* if it is "consciously shown or displayed during the commission of the offense." *Id.* The statute covers conduct that threatens deadly force, even if the actor has no intention to use deadly force. *Flores v. State*, 620 S.W.3d 154, 159–60 (Tex. Crim. App. 2021). But it does not cover the waving around of a fake gun, even if that action has the intended effect. *Id*. A reviewing court asks: (1) whether the object is or could be a deadly weapon under the facts of the case; and (2) whether the deadly weapon was "used" or "exhibited" during the offense. *Id*. at 158.

*Application*

The indictment alleged that Polendo, "while in the course of committing theft of property and with intent to obtain and maintain control" of that property, "did intentionally and knowingly threaten and place Iliana Dufek in fear of imminent bodily injury and death, and the defendant did use and exhibit a deadly weapon, to-wit: A FIREARM." Here, Polendo admitted to consciously lifting his shirt to scare the witnesses but insisted he did not consciously show or display a firearm because "[t]here was nothing there."

Iliana Dufek was the acting manager the night of June 18, when Polendo entered Target. She testified that a loss protection team member who was leaving for the day had told her to keep an eye on two men, one of whom was Polendo. Dufek communicated that message to team members, who then reported back to her on the whereabouts and activities of Polendo and his cohort. The men, who were in the store for 30–45 minutes, eventually stuffed merchandise into off-the-shelf backpacks and a duffle bag and headed towards the exit without stopping to pay. Dufek and another supervisor, Valerie Rodriguez, were waiting at the exit for them. Dufek was prepared to ask to see receipts. But before she could, Polendo "lifted up his shirt and just showed that he had something on him." She described seeing "a handle of a weapon" that "appeared to be

a gun." She "just froze and let him walk out." Rodriguez similarly testified that Polendo made "eye contact . . . and he just lifted his shirt and he walked out." She saw "an item in his shorts that was perfectly wrapped in the shape of a handgun." On cross-examination, both Dufek and Rodriguez admitted that they could not say for sure what they saw was a gun.

Target district manager Adam Mendoza testified that when he interviewed Dufek and Rodriguez in the following days, they were both still scared. Dufek, who was "into" CrossFit and "generally pretty tough," was "very shaken up, startled." Rodriguez was "very scared" and "had to take a leave of absence after the situation." Mendoza's opinion, after talking to the women and watching the surveillance video, was that Polendo displayed a "pistol, a black pistol." The investigating detective, Orlando Torres, on the other hand, watched the surveillance video and said that he saw a black object in Polendo's waistband but could not be sure it was a gun. The jury saw the surveillance video, which showed Polendo walking out of the store with a backpack and a duffle bag. He raised his shirt and exposed a black item in his waistband. Although the video is less than clear, the fact that it captured a dark object visible when Polendo raised his shirt contradicts Polendo's stance that nothing was there and supports Dufek's testimony that there was a gun. The jury could have reasonably inferred from the testimony and the surveillance video that Polendo had a gun.

We find the evidence legally sufficient to support the jury's finding that Polendo consciously displayed a deadly weapon during the Target robbery. We overrule his first issue.

### The Trial Court's Admission of Extraneous Evidence

Next, Polendo argues the trial court erred in admitting evidence of the two other robberies because they were inadmissible under Rules 404(b) and 403.

*Standard of Review and Applicable Law*

Extraneous offense evidence is admissible under both Rules 404(b) and 403 if: (1) it is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and (2) the probative value of it is not substantially outweighed by the danger of unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); TEX. R. EVID. 404(b); TEX. R. EVID. 403. We review a trial court's decision to admit evidence for an abuse of discretion. *Martin*, 73 S.W.3d at 467. If the trial court's ruling was within the zone of reasonable disagreement and correct on any theory of law applicable to the case, we are required to uphold it. *Id.*; *Dossett v. State*, 216 S.W.3d 7, 27 (Tex. App.—San Antonio 2006, pet. ref'd).

*Application*

At trial, Polendo consistently challenged whether he had a gun under his shirt. In voir dire, counsel indicated that Polendo's defense would be that he only pretended to have a gun, and, if jurors believed that defense, then there might have been a robbery or a theft, but there was no aggravated robbery. On cross-examination, counsel teased out of Dufek and Rodriguez admissions that they were not sure exactly what they saw. That theme continued through closing argument, when counsel argued that Polendo "knows what he did, but he also knows what he did not do. And he did not use or exhibit a firearm."

The jury also heard evidence about Polendo's police interview, where he flatly denied that he had a gun. After being shown still photographs from the surveillance video, he told the officers, "I understand photo shop." He admitted that it was him in the photographs, that he had a "surround sound" in the bags he left Target with, and that he lifted his shirt as he left, but he said, "there's nothing there." He added, "I'm gonna let you know something man, I'm a pro at this shit." "I already know how asset protection works. Why would I bring a gun into play if I can get away with it?" "I picked up my shirt just to scare them bro." He repeatedly told the officers "that's not

aggravated." At one point he said, "Aggravated robbery is this," and he raised his hands perpendicular to his body and gestured as if he were pointing a gun.

The State contends it introduced extraneous offense evidence to rebut Polendo's defense that he "would never bring a gun to steal anything." The State offered evidence that Polendo used or exhibited a gun when committing two other robberies the same week as the Target robbery. The trial court admitted the evidence over Polendo's Rule 404(b) and 403 objections.

First, the jury heard about the June 13 robbery at the Lowe's. A loss prevention officer had put out word to look for "a couple of guys in the store that were—looked kind of suspicious and were getting some power tools." Cashier Jasmine Balboa testified that as Polendo approached, she asked him, "Can I help you?" Polendo lifted his shirt and said, "I don't want any problems." Balboa realized "he ha[d] a gun in his pants" and so she "basically just let him go through." Pro Contractor Salesman Ismael Lopez was waiting for the men by the exit. Lopez saw the men walk past Balboa towards the exit carrying DeWalt tool kits. Lopez asked Polendo if he needed help, Polendo "raised up his shirt. . . [and] exposed the gun, [so Lopez] let him go through." The surveillance video captured Polendo raising his shirt to show a black object in his waistband and Lopez waving the men through on either side of him.

Second, the jury heard about the June 18 robbery at the Marshalls. Crystal Garcia, a loss prevention training specialist, testified that she watched Polendo from her office on CCTV. Polendo was in the store about fifteen minutes putting items in a shopping cart, including an insulated tote and fragrance kits. Polendo eventually got in the line to pay. There, he took out the tote, stuffed the kits into it, and walked out of the line in the opposite direction, leaving the shopping cart behind. He showed the Marshalls associate near the exit "the item in his shorts." Garcia then ran out of her office and saw Polendo go out the glass doors, where another associate, Lance, was waiting. "Mr. Polendo was still holding his shirt, moving out of the way of Lance."

And Lance was frightened. "His hands were up, he had a scared expression, quickly walked towards me stating, Gun, gun, gun." The surveillance video captured Polendo lifting his shirt, and, again, a black item was visible in his waistband.

The trial court did not abuse its discretion in admitting this evidence over Polendo's objections. First, the evidence was admissible under Rule 404(b), which precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion but allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Those listed purposes "are neither mutually exclusive nor collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). So, while evidence of a crime, wrong, or other act is not admissible solely to prove "once a thief, always a thief," it may be admissible for another purpose, such as to "rebut a defensive issue that negates one of the elements of the offense." *Daggett v. State*, 187 S.W.3d 444, 452 (Tex. Crim. App. 2005); *De La Paz*, 279 S.W.3d at 343.

Here, Polendo's defense was that he was just pretending to display a gun. That defense was less credible in the face of evidence that he had just displayed a gun while committing the same exact crime at two other retail stores—one on the very same day. *See Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016).

For similar reasons, the extraneous offenses were admissible under the doctrine of chances. Evidence of a defendant's particular modus operandi—his distinctive and idiosyncratic manner of committing criminal acts—is admissible as a recognized exception to rule 404(b)'s general exclusion of extraneous offense evidence, so long as the modus operandi tends to prove a material fact at issue, other than propensity. *Casey v. State*, 215 S.W.3d 870, 881 (Tex. Crim. App. 2007). The doctrine of chances is a theory of logical relevance that rests on the objective improbability of

the same rare misfortune befalling one individual over and over. That is, "highly unusual events are unlikely to repeat themselves inadvertently or by happenstance." *De La Paz*, 279 S.W.3d at 347 (citing 2 John Wigmore, EVIDENCE § 302 at 241 (Chadbourn rev. 1979)). Evidence of a defendant's particular modus operandi is admissible under the doctrine of chances to prove, inter alia, the corpus delicti (the crime itself) or intent. *Casey*, 215 S.W.3d at 881.

While Polendo's defense was that he "would never bring a gun to steal anything" and that he was only pretending to have a gun, some Target witnesses believed he had a gun. That he was only pretending becomes less likely in light of the similarly committed extraneous offenses. *See Sifuentes v. State*, 494 S.W.3d 806, 815–18 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (similar extraneous robberies in which appellant "purported to sell phones to other victims and quickly accelerated his car after gaining possession of their money, with the result that they were injured by appellant's vehicle striking them or dragging them into the street" admissible under doctrine of chances to show appellant's intent to threaten or place victim in fear of imminent bodily injury or death in a new robbery case committed the same way).[2]

Second, the evidence was not barred by Rule 403, which grants the trial court discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Here, the evidence was probative, and the State needed it—this evidence cast considerable doubt on Polendo's claim that he did not display a firearm. That claim was plausible, given the

---

[2] In *Sifuentes*, as here, the defendant admitted he meant to steal the complainant's property but denied he intended to injure or threaten the complainant with injury. *Sifuentes*, 494 S.W.3d at 816. The court held that the "evidence that appellant had on other occasions committed similar offenses to the one he is charged with serves to reduce the possibility that the act in question was done with innocent intent." *Id*.

equivocation of the witnesses, the quality of the surveillance video, and Detective Torres' testimony that when he reviewed that video, he could not see that the black object was a gun. And there was not a danger of unfair prejudice. There is no indication in the record, as there was for the Target robbery, that the witnesses to the Lowe's and Marshalls robberies were especially traumatized by the crimes. The videos in the extraneous cases reflect that loss protection officers were present, directing and supporting the effected employees. *See Newbury v. State*, 135 S.W.3d 22, 43 (Tex. Crim. App. 2004) (danger of "unfair prejudice" arises if the evidence suggests a decision on an improper basis like an emotional one).

Rather than distracting the jury from the main issue, this evidence brought that issue into sharp focus. The jury heard evidence on a single day. Three quarters of the day was spent on the Target robbery; one quarter was spent on the Lowe's and Marshalls robberies. Although this is a fair amount of time, this was a simple, straightforward case. *See Sifuentes*, 494 S.W.3d at 817.

Under these circumstances, the trial court's decision to admit the extraneous offense evidence was not outside the zone of disagreement. We overrule Polendo's second issue.

### *Ineffective Assistance of Counsel*

In his final issue, Polendo complains of five acts or omissions of counsel that he argues undermine confidence in the outcome of the proceeding.

### *Standard of Review and Applicable Law*

To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate deficient performance and prejudice. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficient performance, an appellant must show counsel's assistance "fell below an objective standard of reasonableness." *Id*. at 812. To establish prejudice, he "must show

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "If the deficient performance might have affected a guilty verdict, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Miller*, 548 S.W.3d at 499 (internal quotation marks omitted). An appellant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813. To defeat this presumption, "the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814 (internal quotation marks omitted).

"Trial counsel should generally be given an opportunity to explain his actions before being found ineffective." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). "In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it." *Id*. (internal quotation marks omitted). "A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id*. at 813–14. Our review is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Id*. at 813.

*Application*

Polendo first argues that counsel was deficient in failing to object when the State asked an improper commitment question during voir dire. A commitment question is one that commits a prospective juror to resolve or refrain from resolving an issue a certain way after learning a particular fact. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). A commitment

question is proper only if it includes facts—and only those facts—that lead to a valid challenge for cause. *Id*. at 182–83.

At voir dire, the prosecutor described a bank robbery case he tried in which a teller said the defendant opened his jacket and displayed what looked to be a gun. The prosecutor said that jurors in that case told him after the trial that they believed the teller and that was enough for the jury to find him guilty. The prosecutor then asked the panelists, "Is there anyone here who disagrees with that or who says, You know what, law enforcement, police, prosecutors, someone should have brought that weapon to show the jury? Can everyone see why they still found that individual guilty? How about the opposite? Does anyone disagree with the outcome?" No panelist responded and the prosecutor moved on.

Polendo argues the hypothetical the prosecutor posed "did more than just demonstrate that a weapon need not be produced; rather, it served to commit the prospective jurors that a 'teller's word' should be sufficient to prove that a gun was in fact exhibited. Here, the 'bank tellers' were Iliana Dufek and Valerie Rodriguez." He claims the prosecutor doubled down on the objectionable hypothetical in closing when he argued, "But when I asked you in voir dire: Is just showing a gun or flashing a gun, displaying a gun enough? Every single one of you said yes. So I'm going to ask you to stick to that."

To the degree the State was testing whether a potential juror would require the State to produce a deadly weapon in this deadly weapon case, it was not an improper commitment question. The State sought to identify a prospective juror who would require the State to produce more evidence than what is required by law. *See Mason v. State*, 116 S.W.3d 248, 254–55 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd) (asking panelists whether they could convict without DNA or medical evidence was commitment question but was not improper because it would support a

valid challenge for cause). We cannot conclude trial counsel was deficient for failing to object to this aspect of the State's question.[3]

Polendo's second and third complaints involve what he describes as "wrongful challenges" to State's Exhibits 1 and 2—the Target surveillance video and Polendo's custodial statement. Counsel challenged the surveillance video on chain of custody grounds, and the custodial statement on Fifth and Sixth Amendment grounds. Neither objection was itself unreasonable. As Polendo points out, gaps in the chain of custody affect the weight to be given the evidence and not its admissibility. *Mitchell v. State*, 419 S.W.3d 655, 660 (Tex. App.—San Antonio 2013, pet. ref'd). But such gaps may be brought out and argued by the parties. *Druery v. State*, 225 S.W.3d 491, 503–04 (Tex. Crim. App. 2007). And, as the State notes, counsel might have objected on chain of custody grounds to create confusion among the jurors and encourage them to give less weight to the surveillance video. Likewise, because Polendo asked to have his "lawyer present" at the beginning of the custodial interview and the officers made some statements before Polendo clarified that he wanted to talk to them, counsel's objection to the statement on constitutional grounds was not facially frivolous. Neither objection was treated as such by either the State or the trial court. Again, Polendo has not overcome the presumption that counsel's performance was reasonable and professional.

Polendo's fourth complaint involves counsel's failure to object during Detective Orlando Torres' testimony that district manager Mendoza told Torres that Target personnel had recognized Polendo from prior acts of theft at Target. The record reflects that the first time this evidence was

---

[3] Even if the hypothetical contained an improper commitment aspect—an aspect that just went to an individual's threshold for reasonable doubt—counsel may have chosen not to object because the point was irrelevant to Polendo's defense that he did not have a gun in the first place. *See Garrett v. State*, 851 S.W.2d 853, 860 (Tex. Crim. App. 1993) ("That an individual venireman would set his threshold of reasonable doubt higher than the minimum required to sustain a jury verdict does not indicate he has a bias or prejudice against the law.").

offered, counsel objected outside the presence of the jury and obtained a favorable ruling. The trial court instructed Detective Torres he could say Target personnel recognized Polendo, but not why. Back on the record, Torres testified only that Mendoza was able to provide him with "Mr. Polendo's name." Then, after the trial court ruled the extraneous offenses were admissible, Torres testified without objection that, "the name was given to me by loss prevention because he was there before and committed several other rob—other thefts and he was detained; they had his name, they had his picture. So I was able to obtain that."

Counsel's decision not to object at that point may have been trial strategy. Again, Polendo described himself as "a pro" shoplifter, not an aggravated robber. The prior acts of theft were consistent with his defense that he knew the rules: asset protection officers would leave him alone as he walked out the door regardless of whether he had a weapon.[4]

Finally, Polendo argues counsel was ineffective because he was unaware of the applicable penalty range at sentencing. Counsel asked for a five-year sentence, but the minimum was fifteen. TEX. PENAL CODE ANN. § 29.03(b); TEX. PENAL CODE ANN. § 12.42(c)(1).

At sentencing, counsel asked "for the minimum sentence of five years." The State responded, "we have proven the enhancement allegation, which raises it to a 15-year minimum" and "proper punishment for someone like Mr. Polendo is no less than 20 years." After those arguments, the trial court asked Polendo his plea "to the allegation listed in the indictment, that you are a repeat offender." Polendo pleaded not true. Counsel then asked the trial court to consider that his client had "already paid his dues on that." Only then did the trial court find Polendo was

---

[4] Several of the store witnesses testified that standard protocol—in the face of a possible theft—is to offer customer service, along the lines of "Can I help you? Are you ready to check out? And if they continue going, you don't fight the customer. Just basically let them—let them exit."

a repeat offender. So, at the time of counsel's request for five years, that sentence was still a possibility for Polendo. TEX. PENAL CODE ANN. § 12.32(a).

Polendo has not shown that his trial counsel provided ineffective assistance. Accordingly, we overrule his third issue.

## CONCLUSION

Having overruled Polendo's issues on appeal, we affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH