COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TIMOTHY NEIL WILLITS, | § | |
| Appellant, | § | No. 08-17-00072-CR |
| | § | Appeal from the |
| v. | § | County Court at Law No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150C03744) |
| | § | |

## **O P I N I O N**

A jury found Timothy Neil Willits guilty of driving while intoxicated (DWI) with a blood-alcohol concentration (BAC) of 0.15 or more. Willits now appeals his conviction in four issues. We affirm.

## **BACKGROUND**

At trial, Officer Arturo Senclair of the El Paso Police Department's DWI Task Force testified he was assigned to patrol on February 20, 2015. Around 1:45 a.m., Officer Senclair initiated a traffic stop after he observed a vehicle travel the wrong way on a one-way street in downtown El Paso. While speaking with the driver, later identified as Willits, Officer Senclair detected the odor of alcohol on his breath, and also noticed that he exhibited slurred speech and

bloodshot, watery eyes. Officer Senclair then requested that Willits exit his vehicle to perform standard field sobriety tests, but Willits refused. Instead, Willits asked questions and wanted an explanation. After Officer Senclair provided an explanation, Willits continued his refusal to perform the requested tests. Based on his investigation, Officer Senclair then placed Willits under arrest for DWI and advised him of his rights. Officer Senclair testified he also advised Willits of statutory warnings given to persons placed under arrest for DWI.

Officer Senclair next transported Willits to the police station where he was asked to provide a sample of his breath, but he refused. In response, Officer Senclair sought and acquired a search warrant for a specimen of Willits's blood. Along with the search warrant, the magistrate also issued an "Order for Assistance in Execution of Search Warrant," which directed "any physician, nurse, medical technician, or phlebotomist, licensed by the State of Texas, qualified in the intravenous removal of human blood . . . to cooperate with any peace officer requesting your professional assistance in the execution of this warrant." Next, Officer Senclair testified he and another officer transported Willits to the El Paso County Detention Facility where they met with a registered nurse to execute the search warrant. Officer Senclair testified he provided a blood sample kit that he retrieved from his patrol vehicle and observed as the nurse extracted blood from Willits's body and placed it into two vials. According to the "Toxicology/Blood Alcohol Kit Laboratory Submission Form," which the State later presented at trial, an individual named Santiago Ortiz, whose title noted on the form was "RN," drew a sample of Willits's blood while at the Detention Facility. The vials were then sealed, and Officer Senclair wrote his name and signature, the case number, and Willits's name on the vials, and Ortiz signed the vials as well. Officer Senclair then wrote similar information on the box containing the vials, sealed it, and then

placed it in storage in a secured refrigerator at police headquarters awaiting transfer for testing.

In addition to Officer Senclair, the State also called Theresa Salazar, a forensic scientist employed at the Texas Department of Public Safety Crime Laboratory in Lubbock, Texas, to testify at trial. Willits objected to the admission of Salazar's testimony regarding the blood test results, arguing that Salazar did not have personal knowledge that the blood tested came from Willits and that the State failed to establish the proper chain of custody for the blood sample, rendering any testimony regarding the results irrelevant. The trial court overruled Willits's objections and admitted the evidence including the blood draw forms. Salazar testified that while she did not have personal knowledge about who drew the blood samples that she tested, or from whose body the samples had come, she based her testimony on information written on the submission form of the blood kit she received for testing, which she had matched to the information provided on the seal of the blood vials. After testing the blood, Salazar testified it yielded a BAC of 0.223. Willits also objected to the admission of the forms contained in the blood test kit, arguing that the information contained in the forms constituted inadmissible hearsay and that admitting the forms would violate his right to confront his accuser under the Confrontation Clause. The trial court eventually overruled Willits's objections and admitted the forms into evidence.

During the defense's case-in-chief, Willits testified that his GPS directed him to make an incorrect turn onto the one-way street, that Officer Senclair stopped him before he could attempt to make a U-turn to correct his direction, and that he did not believe that he was intoxicated nor had lost the normal use of his mental or physical faculties when he was stopped. The defense also admitted a video recording of the blood draw from the jail facility. Willits testified the person who performed the blood draw was not wearing gloves and claimed the area where the blood draw

took place appeared unsanitary.

Following Willits's testimony, the jury found Willits guilty. The trial court sentenced him to one year of imprisonment in the county jail and assessed various fines and court costs. The trial court, however, suspended the imposition of the sentence in favor of placing Willits on eighteen months' community supervision. This appeal follows.

## I.

## DISCUSSION

Willits challenges his conviction in four issues. He argues in Issue One that the State did not properly establish the chain of custody for the blood sample taken from his body and tested by Salazar, and the State did not meet its burden of proof to show that the blood tested was actually his. Willits argues in Issues Two and Three that the State did not meet its burden to show that the blood tested was taken by a qualified person, or that the blood was taken in a sanitary location as required by TEX. TRANSP. CODE ANN. sec. 724.017(a). Finally, he argues in Issue Four that the trial court erred by admitting documents purportedly written by Ortiz regarding the blood draw because they constituted inadmissible hearsay, and that the admission of the documents, and Salazar's related testimony, violated the Confrontation Clause. We discuss each issue in turn.

### Chain of Custody

We first address Issue One, in which Willits argues that the State failed to establish the proper chain of custody for the tested blood. In order for the results of a blood test to be admitted into evidence, the State must establish a proper chain of custody of the blood sample that was drawn from the defendant and later tested. *See Islas v. State*, No. 08-12-00157-CR, 2014 WL 2006713, at *8 (Tex. App.—El Paso May 14, 2014, no pet.) (not designated for publication) (citing

4

*Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd)); *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A chain of custody is sufficiently authenticated when the State establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Mitchell v. State*, 419 S.W.3d 655, 659–60 (Tex. App.—San Antonio 2013, pet. ref'd) (quoting *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)). Proof of the beginning and end of the chain of custody will support admission of the blood sample absent any showing of tampering or alteration. *Islas*, 2014 WL 2006713, at *8 (citing *Penley*, 2 S.W.3d at 537). Theoretical breaches in the chain of custody without evidence of tampering go to the weight of the evidence, not its admissibility. *Id.* (citing *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997)). Establishing that the opportunity for tampering or commingling of the blood sample, absent evidence that such event actually occurred, is not sufficient to require exclusion of the evidence. *Id.* (citing *Darrow v. State*, 504 S.W.2d 416, 417 (Tex. Crim. App. 1974)). We review the admission of blood samples and related laboratory results for abuse of discretion. *Id.* (citing *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000, pet. ref'd)).

On appeal, Willits argues that the trial court erred in admitting the blood test results because the State did not properly establish the chain of custody for the blood tested, thus rendering the results irrelevant. We disagree. The record before us indicates that Officer Senclair testified that he obtained a signed warrant to acquire a sample of Willits's blood, transported him to the jail facility, and retrieved a blood kit from his vehicle for this purpose. This blood kit included Willits's name and his case number written on the side of the box, and the blood vials contained

5

therein also had Willits's name, the time the sample was taken, and both Officer Senclair's and nurse Ortiz's signatures on the labels that sealed them. Officer Senclair testified he personally observed Ortiz withdraw blood from Willits's person. Officer Senclair then sealed the vials and the box containing the kit and transported the sealed kit back to the police station, where it was stored in a locked refrigerator until the crime scene investigator sent the kit to DPS for analysis.

Salazar, the forensic scientist employed by DPS, later testified on voir dire examination that Willits's name appeared on the submission form that came on the box containing the kit. Salazar further testified that she "did not make any notes" indicating that the box had been opened or tampered with prior to her receipt of the box, and that the vials contained within the kit were properly sealed and did not show signs of any tampering. Prior to testing the blood, Salazar matched the information on the vial label with that written on the forms in the kit. The trial court overruled defense counsel's argument that the State had not established that the blood tested came from Willits, and admitted Salazar's testimony and laboratory report associated with the results of the blood test. Salazar then testified that the laboratory results indicated a result of 0.223 grams of alcohol per 100 milliliters of blood present in the blood she tested.

We hold that Officer Senclair's and Salazar's testimonies satisfied the State's burden to establish the beginning and end of the chain of custody. Their testimonies established the beginning and end of the chain of custody, and the record does not contain evidence that the blood sample was tampered with. As such, the trial court did not abuse its discretion in admitting Salazar's testimony regarding the laboratory results. *See Villarreal v. State*, No. 04-15-00290-CR, 2016 WL 4376630, at *6–7 (Tex. App.—San Antonio Aug. 17, 2016, no pet.) (mem. op., not designated for publication) (beginning and end of chain of custody sufficiently established by

6

officer's testimony that he observed the blood draw performed by a nurse occur, observed the nurse seal the vials, and filled out a checklist form regarding the procedure, and where toxicologist testified that she matched the information on the form to the information contained on the unbroken blood vial labels); *see also Islas*, 2014 WL 2006713, at *8–9; *Cordero v. State*, No. 08-05-00285-CR, 2007 WL 4724675, at *7 (Tex. App.—El Paso Jan. 17, 2007, pet. ref'd) (not designated for publication). Likewise, we reject Willits's argument that the State cannot prove the beginning of the chain of custody without testimony of the person who performed the blood draw because testimony by an officer who witnessed the blood draw is sufficient to establish the beginning of the chain of custody. *See, e.g., Villarreal*, 2016 WL 4376630, at *7; *Cordero*, 2007 WL 4724675, at *7. Willits's first issue is overruled.

## Section 724.017(a)

We next discuss Issues Two and Three, which concern whether the blood draw complied with the requirements set forth in TEX. TRANSP. CODE ANN. § 724.017(a). This statute requires the State to establish that (1) the defendant's blood specimen was taken by a physician, qualified technician, a registered professional nurse, a licensed vocational nurse, or a licensed emergency medical technician; and (2) the specimen was taken in a sanitary place. TEX. TRANSP. CODE ANN. §§ 724.017(a), (a-1). Section 724.017(a), however, is inapplicable when a blood draw is conducted pursuant to a warrant since consent, implied or otherwise, is irrelevant in that circumstance. *Zalman v. State*, No. 13-13-00471-CR, 2015 WL 512914, at *8 (Tex. App.—Corpus Christi Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *State v. Johnston*, 336 S.W.3d 649, 660–61 (Tex. Crim. App. 2011), *cert. denied*, 565 U.S. 866, 132 S.Ct. 212, 181 L.Ed.2d 115 (2011); *Beeman v. State*, 86 S.W.3d 613, 616–17 (Tex. Crim. App. 2002)

7

(en banc)); *see also Dye v. State*, No. 08-02-00018-CR, 2003 WL 361289, at *1 (Tex. App.—El Paso Feb. 20, 2003, no pet.) (mem. op., not designated for publication) (where a valid search warrant has been obtained, Chapter 724's requirements become moot). Further, compliance with Chapter 724 offers only one method of conducting a blood draw that may be deemed reasonable under the Fourth Amendment. *Johnston*, 336 S.W.3d at 661; *Beeman*, 86 S.W.3d at 616–17.

On appeal, Willits does not dispute that the blood draw was conducted pursuant to a search warrant, nor does he challenge the validity of the warrant itself. Notably, he also does not argue that the blood draw was conducted in an unreasonable manner under the Fourth Amendment. Instead, he argues that the provisions set forth in Section 724.017(a) were not satisfied because Salazar did not have personal knowledge of whether the place in which Ortiz performed the blood draw was sanitary nor whether Ortiz qualified as a registered nurse. We are not persuaded by this argument because it is undisputed that the blood draw was conducted pursuant to a warrant, the validity of which Willits does not challenge, and it is established that Chapter 724 does not govern the validity of a blood draw conducted pursuant to a valid warrant. *See Johnston*, 336 S.W.3d at 660–61; *Beeman*, 86 S.W.3d 616–17; *Zalman*, 2015 WL 512914, at *8; *Dye*, 2003 WL 361289, at *1; *Fry v. State*, No. 07-17-00025-CR, 2018 WL 3596833, at *2–3 (Tex. App.—Amarillo July 26, 2018, no pet.) (mem. op., not designated for publication); *see also Dromgoole v. State*, 470 S.W.3d 204, 215 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd), *cert. denied*, __U.S.__, 136 S.Ct. 2452, 195 L.Ed.2d 265 (2016) (the defendant bears the burden of proving that a blood draw was not conducted in a constitutionally reasonable manner).

Since the blood draw in this case was conducted pursuant to a search warrant, we conclude that the State was not required to establish that the blood draw was conducted in conformity with

Section 724.017(a)'s requirements.  *See Johnston*, 336 S.W.3d at 660–61; *Beeman*, 86 S.W.3d 616–17; *Zalman*, 2015 WL 512914, at \*8; *Dye*, 2003 WL 361289, at \*1; *Fry*, 2018 WL 3596833, at \*2–3.  Willits's second and third issues are overruled.

## Hearsay and Confrontation Clause

### *Hearsay*

Finally, we discuss Issue Four, in which Willits argues that the trial court erred by admitting the forms contained in the blood test kit because the forms constituted inadmissible hearsay, and because their admission violated the Confrontation Clause.  We first address Willits's hearsay argument that the trial court erred by admitting State's Exhibits 8 and 9, which were blood alcohol kit laboratory submission forms filled out by Officer Senclair,[1] and State's Exhibit 10, which is a blood specimen routing report.  These documents contain the acronym "RN," "Registered Professional Nurse" as a title descriptor for Ortiz.  On appeal, Willits argues that these notations were offered to prove the truth of the matter asserted in the statement, i.e., that Ortiz was a registered nurse, and that the forms constituted hearsay not falling within an exception or exclusion to the hearsay rule.  While not conceding that the trial court erred by admitting the documents, the State responds that even if it did so, Officer Senclair's testimony that the blood was taken by a registered nurse was already admitted at trial, and thus any error in admitting these forms was harmless.  Hearsay is a statement the declarant does not make at the current trial which is offered to prove the truth of the matter asserted in the statement.  TEX. R. EVID. 801(d).  Information contained on chain-of-custody forms which pertains to routine information and duties which do

---

[1] In his brief, Willits contends that Ortiz completed the forms, but does not point to anything in the record supporting that contention.  On review, we find the record shows that Officer Senclair testified that he completed the forms himself and they did not appear to have been altered in any way.

9

not involve any subjective interpretation or analysis by police personnel, such as inventory lists of evidence, may be admissible under the business record exception to the hearsay rule. *See* TEX. R. EVID. 803(6); *Ash v. State*, No. 08-04-00046-CR, 2006 WL 357875, at *3–4 (Tex. App.—El Paso Feb. 16, 2006, no pet.) (not designated for publication) (citing *Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997)). We review the trial court's decision to admit evidence under the abuse of discretion standard. *Ash*, 2006 WL 357875, at *3 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

The facts of this case are similar to those presented in *Mitchell*, 419 S.W.3d at 660. There, an officer testified at trial that he observed a "nurse clean the area with iodine, take a blood sample, rotate the vial and move it ten times, seal it in a manila envelope and place it in a lock box." *Id*. The officer also testified that the blood vials were labeled with the defendant's name and the agency number. *Id*. The State offered into evidence the request form associated with the blood draw to show that the blood vials were the same vials submitted to the crime lab and tested by a toxicologist, and the trial court admitted the form. *Id*. Without deciding whether the request form contained inadmissible hearsay, the San Antonio Court of Appeals held that any error in admitting the forms was harmless because the officer had testified, without objection, that he witnessed the blood draw procedure, and because the information contained in the request form was therefore cumulative of properly admitted evidence. *Id*. (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Cordero*, 2007 WL 4724675, at *7).

Likewise, in *Ash*, 2006 WL 357875, at *3–4, the defendant argued that the trial court erred when it admitted a police chain-of-custody form because the evidence contained in the form

10

constituted hearsay not falling within an exception to the hearsay rule. Recognizing the Court of Criminal Appeals' decision in *Pondexter*, 942 S.W.2d at 585, we held that the trial court did not err in admitting the forms because the information contained on the forms "did not involve any subjective interpretation or analysis by the police personnel" and because a toxicologist's properly admitted testimony regarding the results of the test cured any possible error which may have occurred by admitting the forms. *Id.*, at *4 (citing *Brooks*, 990 S.W.2d at 287).

We are faced with a somewhat similar situation here. On direct examination, the State asked Officer Senclair to describe how the blood was taken from Willits. Officer Senclair responded that the blood was taken by a "registered nurse" using a needle. Defense counsel objected on the basis of lack of foundation, and the trial court overruled his objection. On voir dire examination, defense counsel then elicited testimony from Officer Senclair that he did not have personal knowledge of whether Ortiz was licensed as a nurse. Later, defense counsel objected to the admission of State's Exhibits 8, 9, and 10 on the basis that the notation "RN" on the forms constituted hearsay. The trial court initially sustained the objection. After eliciting testimony that Officer Senclair filled out State's Exhibit 9, a handwritten submission form contained in the blood kit, the State later offered the form again, and the trial court made an unclear ruling on whether it was admitting the form over defense counsel's hearsay objection.[2]

Later, Salazar testified on voir dire examination outside the presence of the jury that Willits's name and the case information were present on the forms contained in the blood kit.

---

[2] After the prosecutor told the trial court that Officer Senclair filled out State's Exhibit 9, the trial court stated that there was no new information in the document that had not already been alluded to through Officer Senclair's testimony. The prosecutor responded that admitting the form went to "optional completeness" and that it "goes to part of Exhibit 6, as well[.]" Following these remarks, the trial court responded, "All right. It's overruled. I'll sustain your objection."

11

Salazar further testified that State's Exhibit 9 was a lab submission form which was typically included in the blood kits received into the DPS laboratory, and that the form was needed by the lab to enter the evidence into the laboratory's information system. Following Salazar's voir dire testimony, the trial court admitted State's Exhibits 8, 9, and 10, and refused defense counsel's request that Ortiz's title be redacted from the forms.

Assuming, without deciding, that the notation "RN" on the forms was a hearsay statement not falling within an exception, we find that any error in admitting these forms was harmless. *See* TEX. R. APP. P. 44.2(b) (under the non-constitutional error standard, we must disregard any error not affecting "substantial rights"); *Mitchell*, 419 S.W.3d at 660; *Longoria v. State*, No. 14-11-01019-CR, 2013 WL 655710, at *9 (Tex. App.—Houston [14th Dist.] Feb. 21, 2013, pet. ref'd) (mem. op., not designated for publication) (trial court's erroneous admission of hearsay testimony is reviewed under the non-constitutional error standard set forth in TEX. R. APP. P. 44.2(b)). Salazar testified at trial about the results of the blood test, which was properly admitted without objection. As such, the proper admission of this testimony cured any possible error that may have occurred by admitting the forms. *See Ash*, 2006 WL 357875, at *4 (any error which occurred in admitting police inventory forms over defendant's hearsay objection where police toxicologist properly testified about the test results of the associated narcotics test was harmless because such evidence was cumulative of properly admitted evidence, and because the information was routine and did not require subjective interpretation or analysis by the witness) (citing *Brooks*, 990 S.W.2d at 287); *see also Pondexter*, 942 S.W.2d at 585.

Likewise, again assuming that the trial court erred by admitting the forms containing the "RN" notation, any error is also harmless because whether Ortiz was a registered nurse was a

12

collateral fact which did not have bearing on the issue of whether the blood draw was properly carried out. This is so because, as explained above, Chapter 724 does not apply to this case, and the State was therefore not required to prove that the blood draw complied with Chapter 724's requirements by demonstrating that a registered nurse performed the blood draw. *See Johnston*, 336 S.W.3d at 660–61; *Beeman*, 86 S.W.3d 616–17; *Zalman*, 2015 WL 512914, at \*8; *Dye*, 2003 WL 361289, at \*1. Since Willits does not challenge the reasonableness of the blood draw itself, and since it was his burden to assert and demonstrate that the blood draw was carried out in a constitutionally unreasonable manner, we find his argument that he was harmed by the admission of the forms because they did not comply with Chapter 724 to be without merit. *See* TEX. R. APP. P. 44.2(b); *Longoria*, 2013 WL 655710, at \*9–10 (any error in the admission of hearsay testimony was harmless where testimony went to an issue not raised at trial, and where testimony establishing the same was properly admitted elsewhere at trial); *Dromgoole*, 470 S.W.3d at 215.

### *Confrontation Clause*

Willits also argues that the admission of State's Exhibits 8, 9, and 10 prevented him from exercising his right to confront his accuser in violation of the Confrontation Clause. The Confrontation Clause affords a criminal defendant the right to confront the witnesses against him. U.S. CONST. amend. V. This means that testimonial evidence is inadmissible unless (1) the witness appears at trial and is cross-examined, or (2) the witness is unavailable, and the defense had a prior opportunity to cross-examine him or her. *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). Testimonial statements are those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a

13

later trial." *Id*. (quoting *Crawford*, 541 U.S. at 52). Evidence concerning the results of laboratory testing, including laboratory reports regarding such testing, are "testimonial" evidence implicating the Confrontation Clause. *See id*. at 636–37; *Bullcoming v. New Mexico*, 564 U.S. 647, 663, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

Although blood test results are testimonial within the context of the Confrontation Clause, several other Texas courts of appeals have held that the Confrontation Clause does not require the person who drew the blood to testify if that person did not participate in the analysis of the blood or contribute to the report documenting the results. *See Alford v. State*, No. 02-16-00030-CR, 2017 WL 370939, at *1 (Tex. App.—Fort Worth Jan. 26, 2017, pet. ref'd) (mem. op., not designated for publication); *Hall v. State*, No. 02-13-00597-CR, 2015 WL 4380765, at *1–3 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op., not designated for publication); *State v. Guzman*, 439 S.W.3d 482, 488 (Tex. App.—San Antonio 2014, no pet.); *Adkins v. State*, 418 S.W.3d 856, 861–62 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 311 n.1, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (declining to construe the Confrontation Clause as requiring "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case"). Likewise, information contained on forms intended to establish the chain of custody of a blood sample is not testimonial in nature where the form does not contain any analysis of the blood or the results of a blood test. *Mitchell*, 419 S.W.3d at 662.

Here, Ortiz was not required to testify regarding the unchallenged blood draw because he did not participate in any analysis of Willits's blood. *See id*. Salazar, however, did perform the

analysis of the blood specimen, and she was therefore required to testify and be subject to cross-examination at trial; nevertheless, it is undisputed that she was available for cross-examination, and was cross-examined by Willits at trial. As such, regardless of whether the blood kit forms were testimonial, the analyst who tested and analyzed Willits's blood was called to testify and was cross-examined by the defense, and Willits's right to confront his accuser was therefore not violated. *See Melendez-Diaz*, 557 U.S. at 309, 311 n.1; *Alford*, 2017 WL 370939, at *1; *Hall*, 2015 WL 4380765, at *1–3; *Guzman*, 439 S.W.3d at 488; *Adkins*, 418 S.W.3d at 861–62. Likewise, we hold that the admission of the chain-of-custody forms did not violate Willits's confrontation rights for the same reasons. *See Mitchell*, 419 S.W.3d at 662. Willits's fourth issue is overruled.

## II.

Finally, in response to our order dated May 25, 2017, the trial court certified Willits's right to appeal in this case, but we note here that the certification does not bear Willits's signature indicating that he was informed of his right to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). Accordingly, we conclude that the certification is defective, and has not been corrected by Willits's attorney or the trial court. To remedy this defect, this Court ORDERS the attorney representing Willits, pursuant to TEX. R. APP. P. 48.4, to send Willits a copy of this opinion and this Court's judgment, to notify him of his right to file a pro se petition for discretionary review, and to inform him of applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Said attorney representing Willits is further ORDERED to comply with all requirements of TEX. R. APP. P. 48.4.

## CONCLUSION

15

Having overruled all issues presented, we affirm the judgment of the trial court.


GINA M. PALAFOX, Justice

January 30, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

16